Argued September 8, affirmed November 10, petition for
rehearing denied December 5, 1972

# KIRKPATRICK ET UX, *Respondents, v.* UNITED STATES NATIONAL BANK, *Appellant.*

502 P2d 579

*Glenn D. Ramirez,* Klamath Falls, argued the cause for appellant. With him on the brief were Ramirez & Hoots, Klamath Falls.

*Alan M. Lee,* Klamath Falls, argued the cause for respondents. With him on the brief were Smith & Lee, Klamath Falls.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action against defendant, as guardian of the estate of Ernest Nolan Lotches, a minor, for property damage in the vandalizing of plaintiffs' home in Klamath county.

After a trial before a jury a verdict and judgment was entered against defendant for $2,056.72 as general damages and $5,000 as punitive damages. Defendant appeals.

1. *Contention that evidence insufficient.*

Defendant contends that the evidence that Ernest Lotches was responsible for the damage to plaintiffs'

house was insufficient. When Lotches was picked up by the police shortly after plaintiffs' house had been vandalized he was intoxicated and was covered with blood from cuts on his body. He said that he had been pushed through "a window." The bedroom window in plaintiffs' house was broken. His shoes were covered with a pink substance. Pink cake icing was found to be tracked into the bedroom of the house. His shoe tracks also matched tracks found outside the house.

In addition to the broken window, the front of a television set, a fireplace screen, and a bedroom mirror were broken and a sewing machine was damaged, among other things. There was cake and cake icing "all over" and the floors, walls and ceilings had to be cleaned.

Lotches was "advised of the charge," after being informed of his constitutional rights. He then "made no attempt to deny the charge" and admitted being in the house. He claimed, however, that he could not remember what he did in the house or who else (if anyone) was with him.

■ After examining the entire record, we hold that the evidence, including the circumstantial evidence and the inferences which the jury could reasonably have drawn from such evidence, was sufficient to sustain a finding by the jury in a civil action that Ernest Lotches either committed the acts of vandalism or was jointly responsible for the resulting damage.

2. *Contention that punitive damages not payable from spendthrift trust.*

■ Defendant contends that "[i]n the case of *Kirk v. Kirk* [254 Or 44, 456 P2d 1009 (1969)], it was held by this Court that the spendthrift trust provision [of

the agreement] between the [United States] Department of Interior and the United States National Bank made the income and trust not subject to execution against the individual Indian and therefore these assets cannot be used for the purpose of assessing punitive damages." Plaintiffs' response is that "[t]here was no evidence of Spendthrift trust property in this case * * *."

If defendant had offered evidence to show that it was a trustee for this minor under the terms of a spendthrift trust, as well as the terms of that trust, the question might have been presented whether such trust funds can be held liable for any claim based on tort, whether for general damages or punitive damages. The few court decisions on this question hold that they cannot, but legal writers contend that provisions of a spendthrift trust which would prohibit recovery from trust funds for torts committed by the beneficiary are invalid as against public policy. See 2 Scott on Trusts (3d ed 1967) 1230, § 157.5, and Griswold, Spendthrift Trusts (2d ed 1947) 442, § 365. Cf. Restatement of Trusts 2d § 157.

In *Kirk v. Kirk, supra,* plaintiffs sought to enforce payment of a tort judgment for general and punitive damages by the attachment of moneys payable to defendant under the terms of a spendthrift trust. This court, after considering the specific provisions of that trust, held (at pp 45-46) that spendthrift trusts have been held to be valid in Oregon and that although an exception has been recognized for the obligation of a beneficiary to pay alimony and child support, plaintiff's judgment in *Kirk* was not shown to be based upon such a claim, with the result that defendant's income from the trust was not subject to execution prior to its receipt by him.

It may be that there was also a trust in this case with spendthrift provisions substantially similar to those involved in *Kirk* and that, if so, our decision on that same question, if properly presented in this case, should be controlled by *Kirk*.

In this case, however, defendant did not offer in evidence the provisions of any spendthrift trust and this court cannot properly take judicial notice of any such provisions. In addition, it appears that the trust fund involved was separate from the guardianship and that the moneys involved were those in the hands of the guardian after disbursement by the trustee. As a result, we cannot properly consider in this case the validity and effect of any such trust provisions.

3. *Contention that punitive damages not allowable against guardian of minor.*

■ Defendant also contends that punitive damages are not allowable against the guardian of a minor's estate when the minor is not made a party and no willfulness, malice or wrongful acts are charged to the guardian. Defendant says that it has found no authority on this question, but that "[t]he Oregon declared policy is that punitive damages are not favored and should not be extended past the point to which previous presidents [sic] commit the court."[1]

---

[1] Defendant did not raise on trial the question whether plaintiffs' entire complaint for general, as well as punitive damages, was defective for failure to name as a defendant the minor, through his guardian ad litem, rather than naming his general guardian as the sole defendant. See Olshen v. Kaufman, 235 Or 423, 431-32, 385 P2d 161 (1963). But see ORS 126.331(1)(b) and 126.331(2). Defendant also has not raised that question in this court by any proper assignment of error. We therefore decline to consider that question on this appeal. See ORS 16.330 and Rule 2.35, Rules of Procedure, Supreme Court of Oregon.

ORS 126.311, adopted in 1961, provides:

"Claims against ward's estate. A guardian of the estate shall pay from the guardianship estate all just claims against the ward, the estate or the guardian as such, whether accruing before or after the appointment of the guardian and whether arising in contract or in tort or otherwise, as provided in ORS 126.316 to 126.331."

Although this court has not previously passed on the question, we hold that in the absence of statutory provisions to the contrary, a "just claim against the ward * * * arising * * * in tort" may include a claim for both general and punitive damages. Under ORS 126.331 (1)(b) such a claim, when established, "shall be satisfied only from property of the ward."

■■ It has been held that a child who is too young to form an evil intention is not subject to punitive damages, but a minor who is 15 years of age, as in this case, is presumed to be capable of malice. See Annot., 67 ALR2d 570, 575-76. See also McCormick on Damages 282, § 79. We have previously held that the legal justification for punitive damages is determent and that such damages will only be allowed when the violation of societal interests is sufficiently great and the conduct involved is of a kind that sanctions would tend to prevent. See *Osborn v. Teague Chevrolet,* 254 Or 486, 489-90, 459 P2d 988 (1969); *Dorn v. Wilmarth,* 254 Or 236, 239, 458 P2d 942 (1969); *Douglas v. Humble Oil,* 251 Or 310, 314-5, 445 P2d 590 (1968); *Sumrell v. Household Finance,* 250 Or 381, 383, 443 P2d 179 (1968); and *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306 (1967).

We hold that the vandalizing of a house by a minor who is old enough to know better, as in this case, falls within this rule.

### 4. *Contention that claim as filed with guardian was defective.*

Defendant also contends that the claim filed by plaintiffs with the defendant, as guardian, was defective in that it did not correspond with the complaint as filed in this case because it did not include a claim for punitive damages (but was limited to $2,056.72 in actual damages) and because it was signed and submitted by plaintiffs notwithstanding the fact that they had previously been paid for their actual damages by an insurance company and had subrogated their claim for such damages to it.

■ ORS 126.321 requires that claims submitted to a guardian must "describe the nature and amount thereof, if ascertainable." Punitive damages, by their very nature, are not previously "ascertainable" in amount for the purposes of filing such a claim. Plaintiffs' claim, however, did state the nature of the claim and that the damage was done "with force and malice," thus putting the guardian on notice that punitive damages might be claimed if the claim were rejected and plaintiffs elected to commence an action at law, rather than to file a "like claim" in the guardianship proceedings, as provided by ORS 126.331. See also Annot., 25 ALR3d 1356.

As for the fact that the claim was signed and submitted by plaintiffs, rather than by the insurance company, it appears that in that respect the claim corresponded with the complaint in this case, which was also filed in the name of plaintiffs Kirkpatrick, rather than by the insurance company. Whether the existence of the subrogation agreement rendered the claim defective is substantially the same as the question whether that agreement also rendered plaintiffs'

complaint and cause of action in this case defective, as next discussed.

5. *Contention that addition of insurance company as plaintiff precludes recovery.*

The complaint in this case was filed by plaintiffs Kirkpatrick, owners of the vandalized house, as the named plaintiffs. At the beginning of the trial, and in discussions in chambers, reference was made to the existence of a subrogation agreement. It appears from the trust receipt that Glens Falls Insurance Company had paid the Kirkpatricks for the property damage, in the sum of $2,056.72 and were subrogated "to all of the rights, claims and interest which the undersigned may have against any person or corporation liable for the loss mentioned above" and that the insurance company was authorized to sue on "all such claims" in the name of the Kirkpatricks.

Defendant's counsel then moved either to dismiss the case as not prosecuted by the real party in interest "or that the insurance company be included as a party plaintiff." After some discussion, plaintiffs' counsel stated that "[i]f the Court does rule that the real party in interest in this case is the Glen Falls Insurance Company Group," he would move that it be added as a party plaintiff. That motion was granted and defendant's motion to dismiss was denied.

No amended complaint was filed, however, and no amendments by interlineation were made on the original complaint, except to amend the title of the case by the addition of the insurance company as an additional plaintiff. Neither was the issue that plaintiff was not the real party in interest raised by defendant by any motion, demurrer, or affirmative pleading,

except for the foregoing oral motion at the time of trial.

At the conclusion of plaintiffs' case, defendant moved for an involuntary nonsuit on the ground, among others, "that there is a two-party plaintiff, and would not be entitled to punitive damages on the basis that the insurance company's liability and loss is strictly contractual, and that any rights to punitive damages would be to the party that was actually hurt, and * * * that unless all parties are entitled to a verdict * * * they are not allowed to separate the rights."

At the conclusion of the trial, defendant moved for a directed verdict on the ground that the evidence failed to prove that Lotches committed the damage. The jury was then instructed that the insurance company was "a party plaintiff" by reason of the subrogation agreement and in submitting the case to the jury, the name of the insurance company was added by interlineation in the verdict form in favor of the plaintiff. Defendant excepted to this instruction on the sole ground that it was "outside of the pleadings, as we have no cause of action or suit alleged in the complaint in favor of Glens Falls Insurance Company." Defendant has not assigned as error the giving of such instructions or the submission of the form of verdict.

Defendant does, however, assign as error the denial of its motions for a nonsuit and directed verdict and contends that it was improper for the complaint to be amended "to add a party at the time of trial [to] avoid the requirement of setting [sic] the cause of action in the complaint which is the basis for the trial." Defendant also contends that "[a] complaint stating no cause of action in favor of one party [the insurance

company] and a cause of action for punitive damages only in favor of a second party [the Kirkpatricks] is not sustainable."

In this confused state of the record four basic questions seem to be presented: (1) whether, in view of the subrogation agreement, this case could be prosecuted by the Kirkpatricks as the real party in interest; (2) whether, upon the addition of the insurance company as a plaintiff, there was a misjoinder of parties plaintiff; (3) whether the verdict and judgment in favor of both the Kirkpatricks and the insurance company for both general and punitive damages was proper; and (4) whether any error relating to any or all of these questions was waived by defendant's failure to raise these questions properly in either the trial court or in this court.

First of all, any error arising from the contention that the insurance company was the real party in interest was waived by defendant's failure to raise it in advance of trial by plea in abatement, since that fact did not appear on the face of the complaint, *Fay v. McConnell et al,* 229 Or 128, 131, 366 P2d 327 (1961), and *Morgan's Estate,* 46 Or 233, 242, 77 P 608, 78 P 1029 (1904). Similarly, any error arising from the contention that there was a misjoinder of parties plaintiff by the addition at the time of trial of the insurance company as a plaintiff was also waived by the failure to raise that contention by motion, demurrer or plea and because the joinder of the insurance company was made only as the result of defendant's objections and insistence. See *Zeuske v. Zeuske,* 62 Or 46, 51, 124 P 203 (1912); 1 Bancroft's Code Pleading 1003, § 714 (1926). See also Clark on Code Pleading (2d ed 1947) 368, § 57.

■ For much the same reasons, we hold that defendant has waived any right to raise the question whether verdict and judgment in favor of both plaintiffs for both general and punitive damages was proper. Again, defendant was responsible for the problem by insisting that the insurance company be added as a plaintiff. Also, this question was not properly raised by motion for nonsuit, and defendant made no proper objection to the instructions under which the case was submitted to the jury or to the form of the verdict or judgment.

We have also considered defendant's contentions that the trial court erred in rulings on evidence and find that such contentions have no merit.

For all of these reasons we affirm the verdict and judgment of the trial court.